IN RE YERGY'S ESTATE. BAYNES ET AL., RESPONDENTS,
v. SCHROEDER, EXECUTOR, APPELLANT.

(No. 7,783.)

(Submitted April 20, 1938. Decided May 2, 1938.)

[79 Pac. (2d) 555.]

*Messrs. Paul W. Smith, David R. Smith* and *J. Miller Smith, Jr.,* for Appellant, submitted a brief; *Mr. Paul W. Smith* argued the cause orally.

*Mr. John W. Mahan,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

The question for decision involves the construction of a will. George O. Yergy died in 1906. He left a will which was probated, and his property was distributed in accordance therewith. The will provided for the payment of the expenses of his last illness, funeral expenses, costs of administration and debts, and then devised all of the balance of his property to his wife, Mary Alice Yergy, for her lifetime, the remainder to go to certain of his relatives after her death.

The pertinent part of the paragraph of the will involved here reads as follows: "Thirdly, I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever the same may be found, to my beloved wife Mary Alice Yergy: to have and to hold the same for and during her natural life; and I expressly give and grant unto her the right, power and privilege of enjoying all the rents and profits therefrom and such portion of the principal as she may from time to time desire with full power to sell or otherwise dispose of, or mortgage, or hypothecate the same, and to invest and reinvest the proceeds arising from sales, and again to dispose of properties acquired by such investment or reinvestment, and in all respects to manage, conduct, control, use and enjoy said property, the same to all intents and purposes and with like effect as if she were the sole owner thereof and of the remainder and reversion thereof, save and except that she shall not make any testamentary disposition thereof. I intend that the powers herein given shall be most amply construed, as it is my wish and will that my wife during her life shall have full and absolute use, management, enjoyment and control of my real estate without any restriction whatever, save and except as to the testamentary disposition thereof. Upon the death of my wife all of the residue of my estate then remaining in her hands or owned by her shall be divided into five equal shares or parts; * * * ." The paragraph then provided that the five equal shares should, upon the death of Mary A. Yergy, go to certain of the brothers, sisters, and a nephew of George O. Yergy, or

to their heirs in case any of them were deceased at the time of the death of the widow.

The estate left by decedent amounted to somewhat more than $73,000 at the time of his death. The widow had separate property of her own. She died on February 7, 1936. At that time her property was valued at about $30,000, and the remaining part of the estate of her husband had an estimated value of about $33,000. Mary A. Yergy left a will devising her property to persons other than the relatives of her husband described in his will. Philip G. Schroeder was named as the executor of her will, which was probated, and he was appointed and proceeded to administer her estate. He caused to be filed an inventory and appraisement of all of her property. In this inventory he listed and caused to be appraised all of the property and assets shown by the books of Mary A. Yergy to be owned by her at the time of her death.

About this time the surviving devisees, or remainder claimants, filed a petition to terminate the life estate of Mary A. Yergy, and take the remainders. Just what final action was taken on this petition the record does not show; apparently, however, a conflict arose between the two different sets of heirs or devisees as to certain items which are the subject of this controversy. In order to understand the situation it is necessary to take into consideration the manner in which the widow handled her individual property and the life estate property.

It appears that immediately after her husband's death she employed a business manager and bookkeeper, who remained with her until about the year 1922, when he died. Thereupon she employed Schroeder to act in that capacity. He looked after the business of both estates and kept separate accounts as to each. However, she paid his full salary from the life estate. This salary amounted to about $8,900. It is the contention of the remaindermen that one-half of this salary should have been charged against Mary A. Yergy personally, because about one-half of the work involved her property and the other half the life estate property.

After the inventory was filed in the estate of the deceased widow, the claimants to the remainders filed a petition in the estate of Mary A. Yergy to require the executor of her estate to strike from the inventory of her property the sum of $4,272.02 and to include that sum in the assets of the life estate which had been enjoyed by her since the death of her husband and terminated by her own death. The object was to augment the remainders by the addition of that amount, which the remaindermen alleged was wrongfully included by Schroeder, as executor, in the estate of Mary A. Yergy, to the detriment and reduction of their remainder shares.

Schroeder, as executor, answered and the matter proceeded to trial by the court without objection by either party as to the form of action, procedure or any other matter. At some stage of the proceedings a suggestion was made to the court that there should be an audit of the books of Schroeder as they were kept for the two estates. One McCoy was appointed and, after an audit of the accounts, he made a rather exhaustive report. His reports showed that the compensation paid Schroeder was paid entirely from the income or assets of the life estate. It also showed that an item or items amounting to $272.02 had been erroneously charged against the life estate, whereas the expenditures represented repairs and betterments on the individual property of the widow.

Evidence was adduced by petitioners at the trial. The only witnesses sworn were McCoy, the accountant, and Schroeder himself. No evidence was adduced by the executor of the widow's estate, other than the statement of Schroeder. It then became clear from the evidence that there were but two issues in the case. The first was as to the right to pay Schroeder his compensation entirely from the proceeds and assets of the life estate, and the second was as to the erroneous charge of $272.02 as before indicated. The important issue with relation to Schroeder's salary of necessity involved a construction of the will.

As we have indicated, no question was raised about the matter of procedure or the form of the action in the district court. The

court made and caused to be entered what was denominated a "judgment and order," by the terms of which it directed Schroeder, as executor of the widow's estate, to transfer and set over $4,272.02 from the inventoried property of the widow to the remaindermen. From this order, Schroeder, as executor, has appealed to this court.

Before the hearing in this court, counsel for the remaindermen made a motion to dismiss the appeal on the ground that it was not taken from a final judgment or order in accordance with our statutes. As we have indicated, the proceeding is not in strict conformity with the usual procedure in such matters. However, in view of the fact that no objections were made in the district court to the form of action or to the procedure adopted, we think that that objection comes too late. While the procedure might not have been the wisest or the best course to ascertain the facts involved, it did nevertheless present directly the question of the distribution of a part of the property. This matter was evidently understood by the court because it denominated its decision as a "judgment and order," which, in fact, it really was.

It is perfectly clear that the issues submitted to the court and decided really involved the question as to the rights of the different claimants to certain property subject to distribution. There is no merit in the motion to dismiss. The parties having voluntarily submitted their differences, and the court having had jurisdiction, the form of the action or the character of the procedure was not important. Whatever is said or may be implied by the present holding may be taken and understood as reversing anything said to the contrary in the case of *In re Spriggs' Estate*, 68 Mont. 92, 126 Pac. 1108. The motion to dismiss is overruled. The order or judgment was appealable under subdivision 3 of section 9731, Revised Codes.

It must be borne in mind that no readministration of the estate of George O. Yergy was required. All that was necessary in that matter was to terminate the life estate, establish *heirship*, and make distribution to the parties entitled thereto under the

will of George O. Yergy. The order from which the appeal was taken was not exactly a decree of distribution to the remaindermen, but the court evidently understood it to be in effect that, because it ordered the amounts ascertained paid to the remaindermen. The fact that such amounts might be later included in a general decree terminating the life estate and making final distribution of the remaining property of George O. Yergy does not alter that fact and does not affect the situation presented here.

It is obvious that the main point in issue involves the proposition that the remaindermen, who are now entitled to the balance of George O. Yergy's estate and property, claim that the widow misapplied the funds of the life estate when she compensated Schroeder as her bookkeeper for taking care of her private business and keeping her private accounts. They claim that by paying Schroeder in that way she indirectly accomplished a testamentary disposition of the property of George O. Yergy, an act which she was expressly forbidden to accomplish.

In order to construe the provisions of the will we must do so in strict conformity with the pertinent sections of our statutes. Chapter 78, Revised Codes, sections 7016 et seq., relates to the interpretation of wills. By these sections the following principles are declared:

"A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." (Sec. 7016.)

"In cases of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." (Sec. 7017.)

"In interpreting a will, subject to the law of this state, the rules prescribed by the following sections of this Chapter are to be observed, unless an intention to the contrary clearly appears." (Sec. 7018.)

512

"Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will." (Sec. 7022.)

"All the parts of a will are to be construed in relation to each other, so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail." (Sec. 7020.)

"The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Sec. 7023.)

"The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative." (Sec. 7024.)

The principles declared in the foregoing sections must be given full application in any construction made of a will. We now proceed to an examination of the section of the paragraph of the will that has caused the trouble here.

It will be observed that George O. Yergy first devised and bequeathed all of his property, real, personal, and mixed, to his wife, to have and to hold during her natural life. By this phrase alone he gave her a legal life estate with all of the rights and privileges appurtenant thereto; but he did not stop with that. He then expressly granted her the right, power, and privilege of enjoying all of the rents and profits therefrom and such portion of the principal as she might from time to time desire, with full power to sell and dispose of property, hypothecate the same, invest and re-invest, manage, conduct, control, use, and enjoy the property, "the same to all intents and purposes and with like effect as if she were the sole owner thereof and of the remainder and reversion thereof."

Then came the only reservation in the section, which is as follows: "Save and except that she shall not make any testamentary disposition thereof." Still not satisfied with the broad powers, direct and implied, involved in the devise of the life estate, he added another statement, which is as follows: "I intend that the powers herein given shall be most amply con-

strued, as it is my wish and will that my wife during her life shall have full and absolute use, management, enjoyment and control of my real estate without any restriction whatever, save and except as to the testamentary disposition thereof.'' The will then proceeded to nominate the widow as executrix without bonds.

It will thus be observed that the testator was so anxious to give full power and authority to his widow that he stated the matter in most every conceivable way possible. He not only emphasized her right to the use of the income in the way of rents and profits, but he specifically stated that she had full power and privilege to use any part of the principal that she might from time to time desire. It is significant that the right to use the principal was not limited to necessity, but was only limited by her desire.

We confess that no broader, more sweeping or comprehensive grant of power and authority could have been evolved or declared. It is absolutely plain that what testator intended was that she should have the right to use all of his property in every way she might desire during her lifetime, and that the only restrictions placed upon that use was that she could not make testamentary disposition of it. To state it in another way: It simply meant that she could use the property, manage and enjoy it even to the extent of selling it and using the proceeds thereof in accordance with her own desires, but whatever part thereof was left at the time of her death should go in accordance with the further provisions of his will; in other words, none of it could go to her heirs or devisees after her death.

It was conceded by counsel for the remaindermen that the widow had a perfect right to employ help for her enjoyment; that she had a right to hire servants, chauffeurs, and any other employees she might desire for any purpose she might decide upon during her lifetime, but they attempt to draw the line upon her using any of the property to hire a bookkeeper or manager for her own private property. We are unable to make such a distinction. The powers expressed in the will, when read

in the light of the statutes, are absolutely conclusive under the facts of this controversy.

It is not necessary for us to decide the matter of an attempt on her part to avoid and defeat the devise or bequest of any of the property to the remaindermen by subterfuge or unfair manipulation of the two properties. No such charge can fairly be said to be involved in the present controversy. What we say is, if she had a right to hire servants, to travel and pay for her enjoyment from the life estate, that power and authority was broad enough to include the hiring of a bookkeeper to keep her own accounts. Certainly, the keeping of those accounts herself would have detracted from her enjoyment, and if she chose to hire a bookkeeper she thereby relieved herself of certain burdens and was thereby enabled to make the life estate contribute to her enjoyment.

We, therefore, hold that Mary A. Yergy, the widow, was clearly acting within her right when she employed Schroeder as bookkeeper and manager and paid him from the assets of the life estate.

The item of $272.02 was a different matter, and involves a different proposition. It might have been said that she had a right to make such expenditure under the broad powers of the will if she had desired to do so. However, it is not necessary for us to pass upon that matter here, and we do not do so. The facts disclose that the widow was scrupulously careful to keep the affairs of the two estates separate and apart. The auditor found that no misapplication of funds occurred, except as to that item. That matter involved some repairs and betterments on some of her individual property. Schroeder, who had charge of her affairs and, in fact was her *alter ego*, said that those items were erroneously charged to the life estate. There is no denial of that fact and no controversy about it. A palpable, admitted error should be corrected. The district court was right in directing that that amount of money should be retransferred to the estate of the remaindermen so that it might be distributed in accordance with the will of George O. Yergy. We say this because there is nothing in the record to disclose

that either the widow herself or her representative, Schroeder, had any thought or design to have the items constituting that amount charged to the life estate, but that such was done purely by clerical error.

We, therefore, hold that the order and judgment of the district court was erroneous as to the one-half of the salary of Schroeder; that it was correct as to the $272.02; that the judgment and order should be amended and corrected in conformity with this opinion. The order and judgment is therefore reversed as to the salary item and affirmed as to the item of $272.02. Each side shall pay its own costs of this appeal.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON and ANGSTMAN concur.

MR. JUSTICE MORRIS:

I dissent. Section 7016, Revised Codes, quoted in the majority opinion, provides in part that, ''A will is to be construed according to the intention of the testator.'' The will of George O. Yergy expresses but two intentions: First, the use of all of his estate by his wife, Mary Alice Yergy, during her natural life, with liberal management granted to her; and, second, upon her death the remainder to go to his heirs. The cost of the management of her own private estate, inherited by her heirs, was not essential to the full and complete enjoyment of the life estate bequeathed to her by her husband and was an infringement upon the life estate and the rights of the remaindermen, to the extent of the cost of such management.

Rehearing denied June 1, 1938, MR. JUSTICE MORRIS dissenting.